UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                   No. 1:10-CR-2456-DHU

DAVID WASHBURN,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant David Washburn's Amended Motion for Compassionate Relief or, in the Alternative, for a Reduction of Sentence (Doc. 105). The Government filed a response in opposition (Doc. 106). Having considered the briefs, relevant law, and being otherwise fully informed, the Court finds the Motion is well-taken and will be **GRANTED**. Exercising its authority to modify Defendant Washburn's sentence for extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i), the Court will reduce his term of imprisonment to time served.

## BACKGROUND

On May 7, 2010, Defendant encountered police in the parking lot of a Days Inn Hotel in Albuquerque, New Mexico. 7/24/12 Amend. PSR, ¶ 9 (Doc. 106-1). The encounter occurred because officers were examining a reportedly stolen motorcycle that Defendant approached and attempted to mount. *Id.* ¶¶ 9-10. Once Defendant was confronted, he attempted to flee and a struggle ensued. *Id.* ¶ 10. During the struggle, Defendant struck one officer in the right eye area. *Id.* Defendant was eventually apprehended and a backpack he possessed was searched. *Id.* ¶¶ 11-12. Officers recovered 92 MDMA pills, 20.5 net grams of pure methamphetamine (69.2 gross grams), and a Springfield Arms XD firearm. *Id.* ¶¶ 11-12, 16. The firearm was loaded with 12

1

rounds and reported stolen from the Albuquerque Police Department. *Id.* ¶¶ 12, 14. Defendant claimed he acquired the firearm by trading approximately $200 worth of methamphetamine for it. *Id.* ¶ 12.

Seven months later, on December 14, 2010, Defendant again encountered officers and fled. *Id.* ¶¶ 18-20. This time, he fled on a motorcycle. *Id.* ¶¶ 18-19. Police caught up with Defendant after he crashed into a light pole and another struggle ensued. *Id.* ¶¶ 19-21. During the struggle, officers noticed Defendant trying to reach for a firearm under his jacket. *Id.* ¶¶ 19-20. At least one officer believed Defendant planned to use the firearm. *Id.* ¶ 26. Officers then struck Defendant in the head with a flashlight causing him to drop the firearm. *Id.* ¶ 20. The firearm was loaded with 12 rounds of .40 caliber ammunition, reported stolen from the United States Border Patrol, and had an altered serial number. *Id.* ¶¶ 21, 26.

On March 14, 2012, pursuant to Rule 11(c)(1)(B), Defendant pleaded guilty to three counts in two separate indictments. Defendant pleaded guilty to:

(a) Indictment I, Count I (10-cr-02456): Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B);

(b) Indictment I, Count III (10-cr-02456): Carrying a Firearm During and In Relation to a Drug Trafficking Crime in violation of 18 U.S.C § 924(c)(1)(A); and

(c) Indictment II, Count I (11-cr-00283): Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).

On January 3, 2013, Judge James A. Parker of the District of New Mexico sentenced Defendant to 200 months imprisonment. Doc. 82 at 4. Defendant was sentenced to 140 months imprisonment for Count I of Indictment I, 60 months imprisonment for Count III of Indictment I

(to run consecutive), and 120 months imprisonment for Count I of Indictment II (to run concurrently). *Id.*

Defendant is presently incarcerated at FCI Otisville in Orange County, New York. Defendant is scheduled to be released on February 25, 2025. Doc. 106-2. His release will be followed by five years supervision. *Id.*

## LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A)(i), federal courts are permitted to reduce a defendant's term of imprisonment and/or modify his conditions of supervised release if, after a consideration of the factors set forth in 18 U.S.C. § 3553(a), "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Prior to the passage of the First Step Act of 2018, only the director of the BOP could move for a reduction under the statute, rendering federal prisoners unable to apply for compassionate release on their own behalf. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). However, Congress amended the law to allow defendants to move for sentence reductions under § 3582(c)(1)(A)(i) once they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

A district court may grant a motion for the reduction of a sentence "if three requirements are met: (1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable." *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021). "[D]istrict courts may deny compassionate-release motions when any

of the three prerequisites listed in § 3582(c)(1)(A) is lacking." *Id.*, 993 F.3d at 831 n.4 (internal quotation marks omitted).

Because "the Commission has been unable to comply with its statutory duty of promulgating a post-First Step Act policy statement . . . the Sentencing Commission's existing policy statement is applicable only to motions filed by the Director of the BOP, and not to motions filed directly by defendants." *Id.*, 993 F.3d at 836–37; *see also United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021). Thus, district courts "possess the authority to determine for themselves what constitutes extraordinary and compelling reasons," on defendant-filed motions and are not bound by the Commission's current policy statements. *Maumau*, 993 F.3d at 832, 836 (internal quotation marks omitted). *See also United States v. Mendoza-Contreras*, 2023 WL 2706808, at *3 (10th Cir. Mar. 30, 2023) ("Currently, there is no policy statement applicable to motions filed by defendants. Rather, the Sentencing Commission's existing policy statement applies only to motions filed by the BOP.") (citation omitted).

## DISCUSSION

### I. Section 3582(c)(1)(A)'s Exhaustion Requirement

Defendant has exhausted his administrative remedies. Defendants may move for compassionate release in federal court once they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A) (emphasis added). *See United States v. Springer*, 820 Fed. Appx. 788, 791 (10th Cir. July 15, 2020) (unpublished) (stating that the exhaustion requirement is satisfied if an inmate has requested that the BOP move for compassionate release on their behalf and "thirty days have

passed since the 'warden of the [inmate]'s facility' received a compassionate-release request from the inmate").

Here, on January 26, 2021, Defendant petitioned the FCI Otisville warden to file a request for compassionate release on Defendant's behalf. Doc. 106-3. Over a month later, on March 16, 2021, the warden rejected Defendant's petition. Doc. 106-4. The Government does not dispute this series of events. *See* Doc. 106 at 7. The Court finds that Defendant has satisfied Section 3582(c)(1)(A)'s exhaustion requirement.

## II. Extraordinary and Compelling Reasons that Warrant a Sentence Reduction

Defendant argues that "a combination of factors present extraordinary and compelling reasons" for his release. Doc. 105 at 12. First, Defendant's ailing mother needs a live-in caregiver because her previous caregiver, Defendant's sister, committed suicide in 2017. Defendant's mother has serious physical and mental conditions including degenerative discs in her back; chronic pain in her back, neck, arms, and legs; Post-Traumatic Stress Disorder; anxiety; Bipolar disorder; and fibromyalgia. Defendant asserts that,

> Together these physical and mental health ailments cause Ms. Washburn to have difficulties in caring for herself, make it impossible for her to attend to her daily activities of life without help and prevent her from complying with her extensive medication regime. Sadly, these conditions have been exasperated by the isolation caused by the global pandemic and Ms. Washburn's physical and mental health has deteriorated markedly since Mr. Washburn first filed his *pro se* Motion.

*Id.* Second, Defendant suffers from "respiratory problems and sleep apnea due to a deviated nasal septum and mucoperitoneal disease throughout his sinuses," which increases his risk of suffering severe complications from COVID-19 despite being vaccinated against the virus. *See id.* at 13. Lastly, Defendant has diligently rehabilitated himself while incarcerated, as evidenced by having participated in "more than forty educational and health programs, including art, music, language and physical education classes, parenting classes and advanced educational opportunities in

horticulture." *Id.* He has no "virtually no disciplinary infractions," has been drug-free while incarcerated, and he has

> acted as a teacher's aide and tutor in the Horticulture program at FCI Otisville and he has been enrolled in the Horticulture Career Training Program through a partnership with Cornell University. In addition to these activities, Mr. Washburn has also assumed the responsibility for maintaining the facility's greenhouse and flower beds, he has built an aquaculture pond inside of the greenhouse and he has been driven to learn everything he can about horticulture. The Horticulture Instructor at the facility describes Mr. Washburn as conscientious and hard working, always on time and never idle and he indicated that he nothing but the highest expectations for Mr. Washburn's success upon his release.

*Id.* at 14. Defendant also has developed a release plan, including employment and medical care plan. *Id.*

In response, the Government argues Defendant has not demonstrated that extraordinary and compelling reasons warrant his release. Doc. 106 at 15. The Government argues that neither his mother's medical condition, nor his own, nor his rehabilitative efforts, amount to extraordinary and compelling reasons. *See id.* at 15-19.

For the reasons explained below, the Court holds that several factors combine to form extraordinary and compelling reasons for compassionate release in this case. *Cf. United States v. Almontes*, 2020 WL 1812713, at *5 (D. Conn. Apr. 9, 2020) (holding that, although no single factor warranted release, "a combination of factors add up to extraordinary and compelling reasons"). The most important factor is Defendant's status as the only available caregiver for his aging and disabled mother.

### A. Role as Only Available Caregiver for Mother

Defendant has established that the circumstances involving his mother's caregiving contributes to a finding of extraordinary and compelling reasons that warrant his compassionate release because he is the only available caregiver for her. As described above, his mother has a

host of serious medical and mental health conditions which interfere with her ability to care for herself. Defendant is the only available caregiver for his mother because his sister, his mother's previous caregiver, committed suicide.

Numerous courts around the country have recognized that extraordinary and compelling reasons exist in similar circumstances. In *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019), the Court found that the defendant's circumstances were "similar to those that the Sentencing Commission specifically articulated as examples of 'extraordinary and compelling reasons' in its policy guidance. See U.S.S.G. § 1B1.13 n.1. Mr. Bucci is the 'only available caregiver,' *id*. § 1B1.13 n.1(C)(ii), for an ailing, close member of his family: his mother. This Court sees no reason to discount this unique role simply because the incapacitated family member is a parent and not a spouse." *Bucci*, 409 F. Supp. 3d at 2 (internal citations omitted).[1] The Court went on:

> While surely many inmates share the plight of having an incapacitated spouse or partner at home, the Sentencing Commission has made clear that courts ought consider that circumstance an "extraordinary and compelling reason" for compassionate release only when the defendant is the "only available caregiver" for him or her. U.S.S.G. § 1B1.13 n.1(C)(ii). When a defendant is the "only available caregiver" for an incapacitated parent (perhaps a more unique occurrence given that inmates may have siblings or other family members able to care for their parents), then, it is likewise an "extraordinary and compelling" reason warranting compassionate release.

*Bucci*, 409 F. Supp. 3d at 2. In *United States v. Wooten*, 2020 WL 6119321, at *4 (D. Conn. Oct. 16, 2020), the Court recognized that some courts have recognized that " 'extraordinary and compelling reasons' may exist when a defendant is the only available caregiver of incapacitated close family members other than spouses and registered partners—particularly, parents."

---

[1] U.S.S.G. § 1B1.13 cmt. n.1(C)(ii) provides that "extraordinary and compelling reasons exist" when the defendant "would be the only available caregiver" for the defendant's incapacitated "spouse or registered partner."

7

(citations omitted). *See also United States v. Hernandez,* 2020 WL 4343991 (S.D. Fla. April 3, 2020) (finding compassionate release warranted where defendant was the only potential caregiver for his aging and sick mother); *United States v. Riley*, 2020 U.S. Dist. LEXIS 82909, at *7 (D. Vt. May 12, 2020) (granting compassionate release where the defendant's asthma, in the context of the pandemic, and need to care for his father, who submitted an affidavit confirming the seriousness of his conditions, including his deteriorating vision due to glaucoma, and that defendant was the only one able to care for him, constituted extraordinary and compelling reasons).

In sum, the Court finds that Defendant's need to care for his sick mother is an extremely significant factor and weighs heavily toward finding extraordinary and compelling reasons that warrant Defendant's release.

### B. Rehabilitation

"Courts also routinely focus on a defendant's rehabilitation as one (non-dispositive) factor contributing to 'extraordinary and compelling reasons.' " *Wooten*, 2020 WL 6119321, at *5. Here, Defendant's rehabilitation is staggering. In addition to completing forty educational and health programs, including art, music, language and physical education classes, parenting classes and advanced educational opportunities in horticulture, which is in itself impressive and evidence of his rehabilitation, Defendant has thoroughly demonstrated his rehabilitation through his work as a teacher's aide and tutor in the horticulture program at FCI Otisville and his enrollment in the Horticulture Career Training Program through a partnership with Cornell University.

Significantly, the horticulture instructor at the facility describes Mr. Washburn as conscientious and hard working, always on time and never idle, and he indicated that he has nothing but the highest expectations for Mr. Washburn's success upon his release. This glowing review is highly indicative of Defendant's rehabilitation. The Government admits that

Defendant's rehabilitative efforts are "commendable," Doc. 106 at 19, but simply argues that these efforts do not justify release. *Id.* The Court disagrees. Defendant's rehabilitation is another factor that goes to a finding of extraordinary and compelling reasons that warrant release.

### C. Defendant's Medical Condition

Defendant asserts that his chronic respiratory issues, including sleep apnea, could put him at risk of serious complications if he contracts COVID-19. The Government responds with information that the Centers for Disease Control and Prevention do not list any of Defendant's conditions as being associated with a higher risk for severe COVID-19. And that if they did, this concern is mitigated by his vaccination status. The Court agrees that Defendant has not shown that his medical conditions should contribute to a finding of extraordinary and compelling reasons. Nonetheless, the Court maintains that his mother's caregiving needs and Defendant's extraordinary rehabilitation combine to create extraordinary and compelling reasons that warrant his release.

## III. The § 3553(a) Factors

Section 3582(c)(1)(A) also requires the Court to consider the sentencing factors set forth in 18 U.S.C. § 3553(a), "to the extent that they are applicable," before granting a defendant compassionate release. 18 U.S.C. § 3582(c)(1)(A). These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the seriousness of the offense; (3) promotion of respect for the law and to provide just punishment; (4) affording adequate deterrence; (5) protecting the public; and (6) the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1)-(2), (6). The Court has considered these factors and finds that they support Defendant's compassionate release.

There is no doubt that Defendant's offense was serious. Methamphetamine and firearms take an incredible toll on our community on a daily basis. However, Defendant was sentenced for his crimes more than ten years ago, and he is due to be released from custody in approximately one year and eight months. The Court does not agree with the Government that releasing Defendant would undermine respect for the law and fail to adequately deter him or other perpetrators generally. Defendant was sentenced when he was approximately 30 years old. Doc. 106-1 at 3. Today, he is 41 years old. He has been completely removed from society and incapacitated for a lengthy period of time. In the time that he has been behind bars, other individuals of his age have been able to get married, buy a home, have children, and develop their careers. Defendant was rightly punished for his crimes, but he has been punished enough. Defendant has demonstrated complete rehabilitation while in custody, evidenced in particular by his BOP horticulture instructor's assessment:

> During his incarceration at FCI Otisville, [Defendant] has been driven to learn everything he can to be successful upon his release. He is always on time and does not take any time off from work. He has proven knowledgeable and dependable and *I have nothing but the highest of expectations for him upon his release.*

Doc. 95 at 11. The record does not indicate that Defendant has had any serious disciplinary infractions while in custody. In essence, Defendant has done exactly what Congress and society hope of him: he has reformed his behavior so that he can rejoin the community safely. Releasing him now will result in a sentence that is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a). Defendant has formulated a thoughtful release plan, which includes plans for housing, employment, and medical care, all of which indicates his plans for future success. For all of the reasons stated herein, compassionate release is appropriate for Defendant.

The Court notes that Defendant argued, in the alternative, for a thirty-two month reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2). Because the Court has already found that compassionate release is appropriate, it need not address this alternative argument.

## CONCLUSION

The Court finds that extraordinary and compelling reasons warrant a reduction to Defendant Washburn's sentence and that a consideration of the factors set forth in 18 U.S.C. § 3553(a) militate in favor of a sentence reduction. The Court will thus grant Defendant Washburn's request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

IT IS THEREFORE ORDERED that Defendant David Washburn's Amended Motion for Compassionate Relief or, in the Alternative, for a Reduction of Sentence (Doc. 105) is **GRANTED.** Exercising its authority to modify Defendant Washburn's sentence for extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i), the Court will reduce his term of imprisonment to time served.

**IT IS SO ORDERED**.

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE